IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
CASE NO. 6:14-CV-314-RBD-DAB

JAMES DAVID COOPER, JR., on behalf of
himself and others similarly situated,
Plaintiff,

vs.

NELNET, INC., A Nebraska Corporation.

## MOTION FOR PRELIMINARY
## APPROVAL OF SETTLEMENT AND NOTICE ORDER

This proposed class action settlement concerns allegations that Defendant, Nelnet, Inc. (Nelnet), a student loan servicer, placed telephone calls and text messages to the wireless telephones of consumers using an automatic telephone dialing system or an artificial or prerecorded voice without the prior express consent of Plaintiff and the putative class members, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"). Nelnet denies these allegations.

Both Parties were mindful of the benefits to each party, the putative class, and the Court in addressing the prospect of settlement in good faith, as soon as practicable in the course of litigation. However, it was not until after briefing Nelnet's motion to dismiss, including exchanging robust discovery, Nelnet's production of thousands of pages of documents in response to Plaintiff's request for documents, and a full day of mediation before an experienced mediator that this proposed settlement was reached. As a result of the mediation, Plaintiff and Nelnet were able to reach a settlement. A true and accurate copy of the Class Action Settlement Agreement ("Agreement") is attached hereto as *Appendix 1*.[1]

---

[1] The capitalized terms used in this Motion shall have the same meaning as defined in the Agreement except as may otherwise be ordered.

1

Under the Agreement, Nelnet has agreed to pay up to four million five hundred thousand dollars ($4,500,000.00) for the Administrative Costs, the Class Payment Amount, the Incentive Award, Litigation Expenses, and Class Counsel Legal Fees.[2]

The settlement will provide each class member who submits a timely, valid Claim Form one hundred and fifty dollars ($150.00). In the event there is not sufficient funds to pay each claimant $150, each claimant will receive the benefit on a *pro rata* basis from the amount available for the payment of the Class Payment Amount. Furthermore, the Agreement includes non-monetary relief. As set forth in paragraph 5.5 of the Agreement, Nelnet and its Subsidiaries have enhanced personnel training regarding TCPA issues and will continue to engage in personnel training relating to the TCPA. Additionally, Nelnet and its Subsidiaries have developed several enhancements to their education loan servicing systems designed to prevent TCPA violations.

All told, this settlement provides the class with a significant portion of the statutory damages made available under the TCPA, and given the hurdles facing Plaintiff in this litigation, the results achieved warrant preliminary approval of the settlement. As shown below, other federal courts have approved similar settlements.

Plaintiff therefore moves the Court to: (a) preliminarily approve the instant settlement; (b) conditionally certify the Settlement Class; (c) approve the Notice Procedures; (d) appoint Plaintiff as class representative; and (e) appoint Scott D. Owens of Scott Owens, P.A. and Keith Keogh of Keogh Law, Ltd. as class counsel.

---

[2] The Agreement does not provide for a common settlement fund. Instead, Nelnet will pay up to four million five hundred thousand dollars for the payment of the Settlement Costs. All amounts remaining after the payment of the Settlement Costs shall be retained by Nelnet.

# I. NATURE OF THE LITIGATION

### A. Plaintiff's Allegations

On February 25, 2014, Plaintiff, James David Cooper, Jr., commenced this action against Nelnet, by filing a Complaint in the Court, alleging that Nelnet violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.,* ("TCPA") by using an automatic telephone dialing system or artificial or prerecorded voice to place phone calls and SMS (text) messages to Plaintiff's cellular telephone in an attempt to collect the debt of another individual, without Plaintiff's prior express consent.

### B. Litigation, Mediation, and Settlement

Early in the course of this litigation, the Parties were mindful of the benefits of addressing potential settlement at an early stage. On February 25, 2014, Plaintiff filed the Complaint against Nelnet on behalf of those similarly situated, and subsequently moved for class certification. [**DE 1, 6**]. Nelnet moved for dismissal of Plaintiff's Complaint. **[DE 33]**. Based on Nelnet's constitutional challenge to the TCPA in its motion to dismiss, the United States intervened in support of the TCPA. [**DE 44, 50**]. The matter was fully briefed on July 1, 2014.

The Parties engaged in written discovery in which Plaintiff propounded requests for admission, interrogatories, and requests for production of documents. As a result, Nelnet produced thousands of pages of discovery relating to Nelnet's policies, practices, and procedures in placing telephone calls or text messages to individuals, Nelnet's telephone equipment, and call records for the relevant time period. Nelnet subsequently produced extensive class-related data and documents at the request of Plaintiff.

On September 22, 2014, the Parties attended a full day mediation session before a

private, third-party mediator, Rodney Max of Upchurch, Watson, White, and Max.[3] As a result of this mediation, the Parties reached a settlement in principle. The Parties thereafter drafted the Agreement. *Appendix 1*.

## II. SUMMARY OF THE PROPOSED SETTLEMENT

The key terms of the proposed settlement are the following:

**A. Class Definition.** The Settlement Class is defined in the Agreement as follows:

> All persons in the United States to whose cellular telephone Defendant placed a non-emergency telephone call or text message using an automatic telephone dialing system or an artificial or prerecorded voice from February 21, 2010 to the date of the Preliminary Approval of Settlement and Notice Order, where Defendant did not have express consent to call said cellular telephone number.

*Appendix 1*, ¶ 3.47.

**B. Structure of the Settlement Amount.** The Agreement provides in paragraph 4.1 that Nelnet shall pay the actual Settlement Costs, up to four million five hundred thousand dollars ($4,500,000.00).

**C. Individual Class Member Benefits.** A Settlement Class Member who properly and timely submits a Claim Form for an approved claim will receive as much as $150, depending on participation by Settlement Class Members. The total amount available for the Class Payment Amount is calculated by subtracting the Administrative Costs paid by Nelnet and the amounts awarded for the Incentive Award, the Litigation Expenses, and the Class Counsel Legal Fees from the $4,500,000 available for Settlement Costs. The final Class Payment Amount

---

[3] Rodney Max is a principal at Upchurch, Watson, White, and Max. Max is a Florida Supreme Court Certified Circuit Civil Mediator, on the Alabama State Court Mediator Roster, and a Neutral Panelist with the U.S. District Court of Alabama, having conducted more than 4,000 mediations.

is the aggregate amount to be paid to all Entitled Payment Class Members.[4]

   **D. Group Relief and Additional Relief.** In addition to the individual relief to the settlement class provided above, Nelnet has agreed to provide the following group and other relief.

   **1. Safeguard as to Future Calling and Text Messaging:** As set forth in paragraph 5.5 of the Agreement, Nelnet and its Subsidiaries have enhanced personnel training regarding TCPA issues and will continue to engage in personnel training relating to the TCPA. Additionally, Nelnet and its Subsidiaries have developed several enhancements to their education loan servicing systems designed to prevent TCPA violations.

   **2. Payment of Notice and Administrative Fees:** Pursuant to paragraph 9.5 of the Agreement, Nelnet shall pay the Administrative Costs. The Administrative Costs include all costs and expenses of notice to the Settlement Class Members and management of the exclusion, objection, claim, and claim payment processes set forth in the Agreement, including the fees and expenses of the Notice and Claims Administrator necessary to implement those processes, and all costs and expenses of providing notice to as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

   **3. Compensation for the Class Representative:** Subject to court approval, Plaintiff shall, in addition to any recovery that he is entitled to as a Settlement Class Member, be awarded an Incentive Award not to exceed of twenty five thousand dollars ($25,000.00).[5] As set forth in paragraph 6.3.2 of the Agreement, if the application is within this amount, Nelnet shall take no

---

[4] The final Class Payment Amount may be less than or equal to the total amount available for the Class Payment Amount.

[5] Cooper received over 185 calls and texts, and payment less than $25,000.00 would be a disincentive award. *Ira Holtzman, C.P.A, & Associates Ltd. v. Turza*, 728 F.3d 682, 690 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1318 (2014).

position on the application, and will waive any objections to the amount requested.

**4. Payment of Attorneys' Fees:** Under the Agreement, and subject to Court approval, the Parties have agreed that Plaintiff's counsel may apply to this Court for awards of attorneys' fees for a sum not to exceed one million five hundred thousand ($1,500,000.00) in attorneys' fees and costs associated with the Action. Pursuant to paragraph 6.3.2 of the Agreement, if the application is within this amount, Nelnet shall take no position on the application, and will waive any objections to the amount requested.

E. **Release.** In exchange for the relief described above, the release is applicable to all Non-Excluded Class Members and releases any and all claims as more fully set forth in the Agreement, resulting/arising out of any telephone calls or text messages placed to cellular telephones, directly or indirectly, by Nelnet or its Subsidiaries on or before the date the Court enters the Preliminary Approval of Settlement and Notice Order. The full scope of the release, and its exact terms, are fully set forth at paragraphs 7.1.1, 7.1.2, and 7.2 of the Agreement.

### III. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

Prior to granting preliminary approval of a class action settlement, the court should determine that the proposed settlement class is a proper class for settlement purposes. *See Manual for Complex Litigation* (Fourth) § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "A class may be certified solely for the purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (internal quotations omitted).

The Court may certify a class when the plaintiff demonstrates that the proposed class and proposed class representatives meet these prerequisites: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4); *see also Fabricant v. Sears*

*Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). After meeting the strictures of Rule 23(a), the plaintiff must then demonstrate that common questions of law or fact predominate and that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). In determining whether to certify a class, the Court does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). In this case, each of the prerequisites is met.

### A. Numerosity Is Satisfied.

The numerosity prerequisite is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1); *see also Fabricant*, 202 F.R.D. at 313 (finding that Rule 23(a) requires that joinder be impracticable, not impossible). To satisfy this requirement, there is no "definite standard as to the size of a given class, and plaintiff's estimate need only be reasonable." *Id.* (*citing Kilgo v. Bowman Transp. Inc.*, 789 F.2d 711, 718 (11th Cir. 1984)). Generally, the numerosity requirement is not met with numbers less than 21, but is satisfied when the class comprises 40 or more members. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, the Parties believe that the Settlement Class Members List will contain approximately 90,000 to 120,000 unique telephone numbers. Plaintiff contends that all telephone numbers included in the Settlement Class Members List belong to Settlement Class Members. Nelnet disagrees. Nelnet contends that the Settlement Class Members List will be over inclusive because it does not intentionally call or text individuals using an automatic telephone dialing system or an artificial or prerecorded voice without consent, and therefore, Nelnet is unable to identify instances in which such calls may have been placed inadvertently. For example, Nelnet asserts that the Settlement Class Members List will include cellular telephone numbers that

7

originated as landlines but were later ported to cellphones. Nelnet does not have the ability or data to discern when the number was ported to a cellphone and, thus, is unable to determine whether the number was a landline or cellphone at the time it was called or texted. Based on Nelnet's review of the data, Nelnet believes the number of individuals who received such calls, and therefore are Settlement Class Members, could be as low as 15,000, or even lower. But even if the putative class is as few as 10,000 individuals, numerosity is satisfied. Accordingly, the proposed class satisfies the requirement that it be so numerous as to make joinder of their claims impracticable.

### B. Commonality is Satisfied.

The second threshold to certification requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is satisfied when there is "at least one issue affecting all or a significant number of proposed class members." *Fabricant*, 202 F.R.D. at 313; *see also Agan v. Kathzamn & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004) (finding that the commonality requirement is "generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members").

As alleged in this case, all class members share the common issue of whether they received a non-emergency telephone call or text message using an automatic telephone dialing system or an artificial or prerecorded voice from Nelnet. This common factual issue among class members results in common legal questions such as: (1) whether Nelnet violated the TCPA by the sending of such messages; and (2) whether Nelnet's conduct was willful, and subjected it to additional statutory damages under the TCPA. Therefore, this element is satisfied.

### C. Plaintiff's Claims Are Typical of the Claims of the Class.

Rule 23 next requires that class representatives have claims that are typical of those of

the putative class members. Fed. R. Civ. P. 23(a)(3). "[T]ypicality measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. 2003) (internal quotation omitted). Plaintiff's claims are typical of the claims of the class because they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.,* 390 F.3d 695, 714 (11th Cir. 2004) (finding that "[n]either the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification."). In fact, "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *see also Cooper*, 390 F.3d at 714 (finding that named representative need only share the same "essential characteristics" of the larger class). Simply put, when the same unlawful course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *See Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

In this case, Plaintiff and the putative class members allegedly received non-emergency telephone calls or text messages using an automatic telephone dialing system or an artificial or prerecorded voice on their cellular telephones. If these allegations were proven, Plaintiff and the putative class would be entitled to nearly identical statutory damages under the TCPA. Accordingly, the Plaintiff's claims are typical of those of the other members of the class.

### D. Adequate Representation is Satisfied.

Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor mandates both

that: (1) the class representative possess no interests antagonistic to the settlement class, and (2) class counsel is competent. *Fabricant*, 202 F.R.D. at 314-15 (*citing Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987)).

In this case, Plaintiff has interests that are the same as those of the other class members. *See* Decl. of James Cooper, attached as *Appendix 2*. Therefore, Plaintiff has no interests antagonistic to the interests of the proposed class. Further, proposed class counsel have regularly engaged in major complex litigation, have had extensive experience in consumer class action lawsuits involving cellular telephone technology that are similar in size, scope, and complexity to the present case. *See*, Decl. of Scott D. Owens, attached as *Appendix 3*; Decl. of Keith J. Keogh, attached as *Appendix 4*. Therefore, Plaintiff and his counsel will fairly and adequately represent the class.

### E. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).

Once the subsection (a) prerequisites are satisfied, the Federal Rules of Civil Procedure further require that one of the three requirements of Rule 23(b) be satisfied. Rule 23(b)(3) provides that a class action can be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700.

In this case, and in the context of the proposed settlement, common issues of fact and law predominate. Nelnet's alleged practice of placing phone calls and text messages made

through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice is common to each class member's claims and resultant damages. The overarching question in this litigation would be whether Nelnet's conduct of placing telephone calls or text messages using an automatic telephone dialing system or an artificial or prerecorded voice violated the TCPA. Regardless how the Court would rule on this issue, it is the same for every class member.

In addition, the instant class action is superior to any other method available to fairly and efficiently adjudicate the class members' claims. "The inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan*, 222 F.R.D. at 700 (*quoting Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1359 (11th Cir. 2002)). Class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 700 (S.D. Fla. 2004) (internal citations omitted); *Amchem,* 521 U.S. at 615.

Here, absent a class action, many class members would find the cost of litigating their claims to be prohibitive, and such multiple individual actions would be judicially inefficient, especially as the TCPA is not fee shifting. Also, because this action has been settled, the Court need not concern itself with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.") (citations omitted).

In addition, the Supreme Court has recognized that class actions under statutes like the TCPA are appropriate for preliminary approval. *Shady Grove Orthopedic Assocs., P.A., v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010). In *Shady Grove*, the Court considered whether a New York state law prohibiting class actions seeking penalties or statutory minimum damages

precludes a federal court from considering Rule 23 class action status. The Court held that a plaintiff may pursue a class action claim seeking such statutory damages.

The portion of Justice Scalia's opinion joined by three other justices found it "obvious" that plaintiffs may aggregate multiple claims for statutory damages in a class action. *Id.* at 1443. Such Rules "neither change plaintiffs' separate entitlements to relief nor abridge defendants' rights; they alter only how the claims are processed." *Id.* Thus, in responding to the defendant's argument that aggregation of statutory penalties improperly transforms a dispute over $500 into a suit for $5 million, Justice Scalia noted:

> [A]ggregate liability, however, does not depend on whether the suit proceeds as a class action. Each of the 1,000-plus members of the putative class could (as [the defendant] acknowledges) bring a freestanding suit asserting his individual claim. It is undoubtedly true that some plaintiffs who would not bring individual suits for the relatively small sums involved will choose to join a class action. That has no bearing, however, on [the defendant's] or the plaintiffs' legal rights. The likelihood that some (even many) plaintiffs will be induced to sue by the availability of a class action is just the sort of "incidental effec[t]" we have long held does not violate § 2072(b).

*Id.* Justice Stevens' concurrence provides a fifth vote[6] for this holding. *Id.* at 1459 n.18. Therefore, because common questions predominate, maintenance of this action as a class action is appropriate.

---

[6] Responding to Justice Ginsburg's argument that class certification would "transform a $500 case into a $5,000,000 award," Justice Stevens notes:
> [C]lass certification would transform 10,000 $500 cases into one $5,000,000 case. It may be that without class certification, not all of the potential plaintiffs would bring their cases. But that is true of any procedural vehicle; without a lower filing fee, a conveniently located courthouse, easy-to-use federal procedural rules, or many other features of the federal courts, many plaintiffs would not sue.

*Id.* at 1459 n.18.

## IV. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . .[who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). As discussed above, proposed class counsel have extensive experience in prosecuting class actions and other complex litigation of a similar nature, scope, and complexity. *See*, Decl. of Scott D. Owens attached as *Appendix 3*; Decl. of Keith J. Keogh attached as *Appendix 4*. Proposed class counsel have intimate knowledge of the law in this field and have been involved in several high profile consumer class actions involving cellular telephone technology and the application of the TCPA. Further, proposed class counsel have diligently investigated, dedicated substantial resources to the investigation of, and prosecuted the claims at issue in the action, and have successfully negotiated the settlement of this matter to the benefit of the class. Accordingly, the Court should appoint Plaintiff's counsel to serve as class counsel for the proposed class pursuant to Rule 23(g).

## V. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court." The procedure for review of a proposed class action settlement is a well-established two-step process. Newberg & Conte, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002); *see also* David F. Herr, *Annotated Manual for Complex Litigation,* § 21.632 (4th ed. 2004). The first step is a preliminary, pre-

notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (*quoting Manual for Complex Litigation*, §30.41 (3rd Ed.)); *In re Syncor ERISA Litig*., 516 F.3d 1095, 1110 (9th Cir. 2008); *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895 at *4 (S.D. Fla. May 14, 2007). This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Newberg*, §11.25, at 38-39; *Fresco*, 2007 WL 2330895 at *4 ("A proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, if there is probable cause to notify the class of the proposed settlement.") (internal quotations omitted).

The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling Parties. *Manual for Complex Litigation,* § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. *Newberg*, §11.25, at 38-39.

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd,* 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc*., No. 00-14017-CIV, 2002 WL 1162422 at *4 (S.D. Fla. May 7, 2002). With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993). Although this Court certainly has discretion in deciding whether to approve a proposed settlement, proper deference should be given to the

14

consensual decision of the Parties. *Warren*, 693 F. Supp. at 1054 ("The Court is affording great weight to the recommendations of counsel for both Parties, given their considerable experience in this type of litigation."). Ultimately, the Court should approve a class action settlement if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett v. Behring*, 737 F. Supp. 982, 986 (11th Cir. 1984); *Access Now,* 2002 WL 1162422 at *4. When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001).

In determining whether the proposed settlement is "fair, adequate, and reasonable," the following factors are often considered: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett v. Behring*, 737 F. Supp. at 986; *see also In re Sunbeam*, 176 F. Supp. 2d at 1329. Finally, in considering the preliminary approval issue, courts need not "reach any ultimate conclusions on the issues of fact and law underlying the dispute." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

Here, the proposed settlement is fair, adequate, and reasonable and should be viewed as well "within the range of possible approval." This is demonstrated by the amount of monetary relief made available to the class, the prospective relief secured for the class, and the fact that the agreement was the result of hard fought arm's length negotiations by experienced counsel that was conducted by an experienced third-party mediator.

The monetary relief secured on behalf of the class is substantial. Each of the class members who file a timely Claim Form will receive up to $150.00. The non-monetary relief

secured on behalf of the class is also meaningful and will help to prevent TCPA violations. Nelnet and its Subsidiaries have enhanced their personnel training regarding TCPA issues and will continue to engage in personnel training relating to the TCPA. Nelnet and its Subsidiaries have already developed several enhancements to their education loan servicing systems designed to prevent TCPA violations.

The Parties reached the instant settlement after arm's length negotiation and mediation, based upon the extensive information produced by Nelnet in discovery and otherwise, Plaintiff's counsel is confident in the strength of the claims alleged in the Complaint and that Plaintiffs would ultimately prevail at trial.[7] Notwithstanding the foregoing, litigation is inherently unpredictable and the outcome of a trial is never guaranteed.[8] Indeed, Plaintiff faced significant risk in taking this matter to trial, including the possibility that the case would be defeated in dispositive pre-trial motions practice, the Court would deny class certification, or that the result at trial would be in Nelnet's favor. These risks included arguments relating to class ascertainability, typicality, individual questions of consent, whether Nelnet's telephone system was in fact an automatic telephone dialing system, the possibility of regulatory action from the Federal Communications Commission adverse to Plaintiff's position, and whether the TCPA is constitutional. Moreover, Nelnet was represented by competent and formidable counsel. In the end, when the strengths of the Plaintiff's claims are weighed against the legal and factual obstacles present, and the complexity of class action practice, there should be no doubt that the proposed settlement is in the best interest of class members.[9] And, given the strength of this

---

[7] *See* (Declaration of Scott D. Owens) *Appendix 3*, ¶ 23; (Declaration of Keith J. Keogh) *Appendix 4*, ¶ 22.
[8] *See* (Declaration of Scott D. Owens) *Appendix 3*, ¶ 23; (Declaration of Keith J. Keogh) *Appendix 4*, ¶ 22.
[9] *See Appendices 3 and 4*, generally.

settlement, the Parties expect no significant opposition to the settlement by any class members.

The suit has been pending since February 25, 2014, and discovery provided by Nelnet has been robust. As a result, proposed class counsel and Nelnet's counsel had ample foundation upon which to evaluate the proposed settlement.[10] Each party, therefore, had the necessary information to evaluate the strengths and weaknesses of their cases in order to discuss settlement effectively.[11] Armed with this information, the Parties were able to reach the present settlement only after motion practice, discovery, extensive settlement discussions, mediation, and negotiations over settlement terms and language.[12]

Moreover, the results for individual class members exceed those awarded by district courts in similar TCPA class actions. *See, Wojcik v. Buffalo Bills, Inc.*, Case No. 8:12-cv-2414-T-23TBM (M.D. Fla. Aug. 25, 2014) (class claimants to receive $57.50-$75.00 gift card); *Arthur v. Sallie Mae, Inc.*, Case No. 2:10-cv-198-JLR, 2012 U.S. Dist. LEXIS 132413 (W.D. Wash.) (class claimants to receive about $100 each); *In re Enhanced Recovery Company, LLC Telephone Consumer Protection Act Litigation*, Case No. 6:13-MD-2398-orl-37GJK (class claimants to receive injunctive relief and no monetary recovery). The benefit to the class is comparable to the results achieved in *Cummings v. Sallie Mae* on a per class member recovery. *Cummings v. Sallie Mae*, Case No. 12-cv-9884 (N.D. Ill. May 30, 2014) (claimants to receive $179).

In its totality, this settlement is well within the range of approval and should be preliminarily approved by this Court.

---

[10] *See* (Declaration of Scott D. Owens) *Appendix 3*, ¶ 23; (Declaration of Keith J. Keogh) *Appendix 4*, ¶26.

[11] *See* (Declaration of Scott D. Owens) *Appendix 3*, ¶ 23; (Declaration of Keith J. Keogh) *Appendix 4*, ¶ 26.

[12] *See* (Declaration of Scott D. Owens) *Appendix 3*, ¶ 23; (Declaration of Keith J. Keogh) *Appendix 4*, ¶ 26.

## VI. THE NOTICE SHOULD BE APPROVED IN FORM AND SUBSTANCE

The proposed Agreement includes exhaustive Notice Procedures, as set forth in Article 10 of the Agreement, designed to directly reach each member of the class as is practicable. Article 10, *Appendix 1*. First, the Notice and Claims Administrator shall cause the Postcard Notice (Exhibit F to *Appendix 1*) to be sent via regular mail to class members identified by using a reverse look-up service to identify, to the extent possible, the contact information for each unique telephone number which may have received a phone call or text message that is at issue. Specifically, the Notice and Claims Administrator will perform tiered reverse look-up searches utilizing multiple vendors in order to achieve the best results. If at least 70% of the potential Settlement Class Members are not sent the Postcard Notice, the Claims Administrator shall cause Publication Notice (Exhibit E) to be published electronically on the internet and/or social media sites, to the extent necessary to notify at least 70% of the potential Settlement Class Members.

Second, the Notice and Claims Administrator will erect, maintain, and monitor a settlement Website that will serve as a supplement for the other notice and will provide links to the Agreement, the Postcard Notice (Exhibit F to *Appendix 1*), Long Form Notice (Exhibit D to *Appendix 1*), and a downloadable Claim Form (Exhibit A to *Appendix 1*). The Website will provide for online claims submission of the Claim Form. Third, a toll-free Call-In Line shall be established, which will answer frequently asked questions using interactive voice response technology. Fourth, the Notice and Claims Administrator will serve notice of the proposed settlement upon the Attorneys General of each of the fifty United States, the Attorney General of the United States, and other required government officials, pursuant to 28 U.S.C. § 1715, within ten (10) days after the proposed settlement is filed. *See Appendix 1*, § 10.10. The Notice and Claims Administrator shall also provide notice of the proposed settlement to the Consumer

Financial Protection Bureau.

The proposed notices provide Settlement Class Members with a detailed explanation of their options to allow each of them to make an informed decision. The Parties request that the Court approve the form and methods of notice proposed.

### VII. DEFENDANT AGREES WITH THE RELIEF REQUESTED

Nelnet affirmatively agrees with and supports the relief requested by Plaintiff in this Motion. Notwithstanding that Nelnet joins this Motion, this Motion does not constitute an admission by Nelnet of any wrongdoing or liability, it cannot be used for any purpose other than settlement of this action, it shall not be admissible for any purpose whatsoever in any proceeding other than to enforce the provisions of the Agreement, and it is part of the Agreement.

### VIII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court (1) certify the requested settlement class, (2) appoint Cooper as class representative, (3) appoint class counsel as set forth above, (4) preliminarily approve the proposed settlement and enter the proposed order attached as *Appendix 5*, (5) approve the Notice Procedures, and (6) award such other and further relief as is equitable and just.

Dated this 3rd day of December 2014.

Respectfully Submitted,

| | |
|---|---|
| SCOTT D. OWENS, Esq. | BROWNSTEIN HYATT FARBER |
| 664 E. Hallandale Beach Blvd. | SCHRECK LLP |
| Hallandale, FL 33009 | 410 Seventeenth Street |
| Tel: 954-589-0588 | Suite 2200 |
| Fax: 954-337-0666 | Denver, Colorado 80202 |
| scott@scottdowens.com | Tel: (303) 223-1100 |
| | Fax: (303) 223-1111 |
| Keith J. Keogh | RBenenson@bhfs.com |
| Keogh Law, LTD. | JFelder@bhfs.com |
| 55 W. Monroe St., Ste. 3390 | |

| | |
|---|---|
| Chicago, Il 60603 | CARLTON FIELDS JORDEN BURT, P.A. |
| 312.374.3403 (Direct) | 450 S. Orange Avenue |
| 312.726.1092 (Main) | Orlando, Florida 32801-3370 |
| 312.726.1093 (Fax) | Tel: (407) 244-8237 |
| Keith@KeoghLaw.com | Fax: (212) 648-9099 |
| www.KeoghLaw.com | djohnson@cfjblaw.com |
| | |
| Attorneys for the Plaintiff | Attorneys for the Defendant |

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that December 3, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this December 3, 2014, in some other authorized manner for those counsel or Parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *s/ Scott D. Owens*